IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GAMETEK LLC,

        Plaintiff,

  v.

ZYNGA, INC.,

        Defendant.

No. CV 13-2546 RS

(Related to Case Nos. CV-13-3089-RS, CV-13-3472-RS, CV-13-3493-RS)

**ORDER GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS**

### I. INTRODUCTION

Plaintiff Gametek LLC brings this action for infringement of U.S. Patent No. 7,076,445 ("the '445 patent") against several defendants,[1] including Zynga Inc., Funzio Inc., Electronic Arts Inc., and Crowdstar International Limited. These four defendants have moved for judgment on the pleading, arguing in four separate but substantively identical motions that the '445 patent claims an unpatentable abstract idea: the offer and sale of items to players in the course of gaming. Despite the presumption that every issued patent is valid, this appears to be the rare case in which the defendants have met their burden at the pleadings stage to show by clear and

---

[1] Related case *Gametek LLC v. Gameview Studios, LLC* (Case No. 3:12-cv-06184-RS) settled and an order granting the parties' stipulated motion to dismiss was entered on July 2, 2013. The parties in *Gametek v. Rockyou, Inc.* (Case No. 3:13-cv-01205-RS) also reached a settlement agreement and an order granting the parties' joint motion to stay pending final installment payment of a negotiated settlement was issued on October 31, 2013. Neither Gameview nor Rockyou have joined the present motion.

1  convincing evidence that the '445 patent claims an unpatentable abstract idea.  Defendants'
2  motions for judgment on the pleadings must, therefore, be granted.

## II.  BACKGROUND

This case involves a method by which a game operator can offer additional items to players for purchase mid-game without interrupting play.  The '445 patent includes 19 claims, of which claims 1, 15, and 17 are independent.  Claim 1 is representative:

> 1. A method of managing the operation of a game which includes a game environment, and is programmed to control a gaming action for at least one of a plurality of users, said managing method using a programmed computer to effect the following steps:
>    a) tracking the activity of the at least one user in the course of the gaming action;
>    b) permitting the at least one user to create an account for receiving a consideration of the at least one user, the at least one user having a set of demographics;
>    c) determining the eligibility of the at least one user to purchase at least one of a plurality of game objects, said eligibility determining comprises the following sub steps:
>       i) permitting the at least one user to select the at least one game object,
>       ii) setting the purchase price of the at least one game object, and
>       iii) comparing the account balance of the at least one user's consideration with the set price of the at least one game object and, determining if the balance of the user's consideration is not less than the set price, determining the at least one user to be eligible to purchase the at least one game object;
>    d) displaying in the game environment a purchase price of the at least one game object;
>    e) presenting to the at least one user an offer to purchase the game object dependent upon a group of game parameters comprising the tracked activity of the at least one gaming action of the at least one user and, the one game environment or the one set of demographics of the at least one user
>    f) permitting the at least one user to purchase the at least one game object at the set purchase price without interrupting the gaming action of the at least one user; and
>    g) supplying the at least one purchased game object to the at least one user without interrupting the gaming action of the at least one user and incorporating the game object into the game.[2]

---

[2] Plaintiff distinguishes claims 15 and 17 as follows:  "Claims 15 and 17 differ in certain respects from claim 1, including that neither comprises the programmed computer effecting the use of user demographic information, and both comprise the programmed computer effecting the

1   The dependent claims offer various iterations consistent with video gaming. For
2   example, claim 2 covers "[t]he method of claim 1, wherein the gaming environment comprises a
3   video game[3] that generates a series of background images . . . ." Claim 6 covers "[t]he method
4   of claim 5, wherein the at least one attribute is selected by the at least one user from a group
5   comprising at least one of a plurality of levels of skill, one size of ammunition, one rate of speed,
6   one length of life, one piece of information about the game environment, one degree of access,
7   and/or one type of weapon."

8   Although the claim preamble requires "us[e of] a programmed computer to effect" the
9   claimed method steps, the specification suggests the method may be performed with or without a
10  computer, and provides as non-computer illustrations the process by which a municipality might
11  provide a system for certain drivers to pay for the right to drive above the speed limit or the
12  process by which a golfer might purchase the advantage of additional golf strokes during a
13  match. Neither the claim nor the specification provides any details on the "programmed
14  computer" or how implementation of the method steps by means of a computer would differ
15  substantively from non-computer practice.

### III. LEGAL STANDARD

17  Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are
18  closed—but early enough not to delay trial—a party may move for judgment on the pleadings."
19  Such a motion, is "functionally identical" to a Rule 12(b) motion to dismiss for failure to state a
20  claim, differing only in that it is filed after pleadings are closed. *See Dworkin v. Hustler*
21  *Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). In evaluating a motion for judgment on the

---

presenting of offers to purchase game objects dependent upon a group of game parameters comprising at least the tracked activity of the user (as contrasted with claim 1 which comprises the programmed computer effecting the presenting of offers to purchase game objects dependent upon a group of parameters comprising user tracked activity, the game environment, or user demographics)." (Response, at 3.)

[3] Although plaintiff does not seek to construe the phrase "gaming environment" in claim 1, plaintiff asserted at oral argument that this phrase necessarily refers to a video game. Defendants are correct that this reading would render superfluous the phrase "video game" in claim 2, adding support to their argument that claim 1 is not limited to video games. It is not necessary to resolve the significance of this distinction, however, as this order will assume plaintiff's preferred construction for purposes of resolving the motion for judgment on the pleadings.

No. CV 13-2546 RS
ORDER

3

United States District Court
For the Northern District of California

pleadings, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (citation omitted).

"[I]t will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter. This is so because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013). When a § 101 motion is brought, as here, before formal claim construction, the court will adopt the patentee's proffered construction. *See Ultramercial*, 722 F.3d at 1339–40.[4]

## IV. DISCUSSION

Section 101 of the Patent Act defines patent eligible subject matter to include "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof[.]" 35 U.S.C. § 101 (2012); *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010). Although the statute describes patentable subject matter in expansive terms, "[t]he [Supreme] Court's precedents provide three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski*, 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). "These are the basic tools of scientific and technological work, and therefore, if patented, would stifle the very progress that Congress is authorized to promote." *Id.* at 3253 (internal quotations and citations omitted).

At the same time, the Supreme Court has recognized that "too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Thus the Court has stated, "while an abstract idea, law of nature, or mathematical formula [may] not be patented,

---

[4] Gametek only seeks construction of the terms "the at least one user having a set of demographics," "at least one user has made a commitment of consideration," "purchase" and "consideration." (See Joint Claim Construction Statement, Dkt. No. 66.) This order relies upon those constructions proffered by Gametek in its opening claim construction brief. (Dkt. No. 78.)

'an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'" *Bilski*, 130 S. Ct. at 3230 (quoting *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)) (emphasis in *Bilski*). "The inquiry here is to determine on which side of the line the claim falls: does the claim cover only an abstract idea, or instead does the claim cover an application of an abstract idea?" *Ultramercial*, 722 F.3d at 1343.

Defendants argue the '445 patent claims the abstract idea of allowing a user to purchase an object for use during a game without interrupting the flow of play. To the extent the patent claims attempt to limit the claimed method by linking it to "a programmed computer" to effect the claimed steps, without reciting any specific software or hardware, defendants maintain the claims do exactly what the Supreme Court declared unpatentable: recite an abstract idea and then instruct that it be applied on a computer. *See Prometheus*, 132 S. Ct. at 1294. Gametek counters that the '445 patent is not directed to an abstract idea but rather an application in the field of video gaming of what defendants argue is an abstract idea. Gametek further argues the claims impose meaningful limitations, including specific implementations of a programmed computer for managing video games in specific ways. These arguments are addressed in turn.

A. <u>Abstract Idea</u>

Assuming the invention fits within one of the four statutory classes set forth in § 101 (a point the parties do not contest), § 101 demands a preliminary inquiry as to whether the claim raises abstractness concerns at all such that it may pose the risk of preempting an abstract idea. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) *cert. granted*, 134 S. Ct. 734 (2013). Defendants posit that the '445 patent embodies the abstract idea of allowing players to purchase additional objects during a game. According to defendants, this concept comes from a straight reading of the last two steps of claim 1: "f) permitting the at least one user to purchase the at least one game object at the set purchase price without interrupting the gaming action of the at least one user; and g) supplying the at least one purchased game object to the at least one user without interrupting the gaming action of the at least one user and incorporating the game object into the game."

1    Gametek's response notes several limitations embodied in the claim.  Gametek does not,
2 however, offer any alternative characterization of the idea underlying its claims.  As the Supreme
3 Court has observed, "all inventions at some level embody, use, reflect, rest upon, or apply laws
4 of nature, natural phenomena, or abstract ideas."  *Prometheus*, 132 S. Ct. at 1293.  The
5 specification itself offers a variety of illustrations of this general concept, albeit ones it suggests
6 were hampered by the prior unavailability of a systemic means to create, integrate, and trade
7 such advantages.  See '445, Col. 2:20–24.  As a starting point for this analysis, defendants offer a
8 fair reading of the abstract idea underlying the '445 claims, to which Gametek offers no
9 meaningful alternative.

B. Inventive Concept

The more difficult question is whether the '445 patent claims contain sufficient "inventive concept" to transform an unpatentable abstract idea into a patentable application of that idea.  While the Supreme Court has not prescribed a specific test to determine what constitutes sufficient inventive concept, it has made clear that the additional steps must be more than "well-understood, routine, conventional activity already engaged in by the scientific community[.]" *Prometheus*, 132 S. Ct. at 1298.  To make this determination, the claims must be considered as a whole.  *Diehr*, 450 U.S. at 188.  "This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made."  *Id.*

Although recent case law demonstrates the uncertain contours of the present inventive concept analysis,[5] the Federal Circuit has offered some guidance.  *Ultramercial* described the relevant inquiry as "whether a claim, as a whole, includes *meaningful* limitations restricting it to an application[.]"  722 F.3d at 1344 (emphasis original).  The Federal Circuit described several considerations which indicate whether a claim is meaningfully limited;  specifically, whether the

---

[5] The Federal Circuit's recent en banc decision in *CLS Bank* affirmed the district court's finding that the patent at issue claimed an unpatentable abstract idea but fractured into five separate opinions as to the patentability of the system claim.  717 F.3d 1269, 1273 (Fed. Cir. 2013).  The Supreme Court has granted review.  134 S. Ct. 734 (2013).

claim (1) preempts all practical applications of a natural law, (2) contains only insignificant pre- or post-solution activity, (3) provides no real direction, i.e. the limitations are overly-generalized, or (4) requires a particular machine implementing a process or a particular transformation of matter.[6] *Id.* at 1345–67. Because every patent is assumed to be properly issued, there must be clear and convincing evidence the claims are not meaningfully limited to find a patent covers ineligible subject matter. *See id.* at 1342, 1338–39.

### 1. Preemption

A patent claim is not meaningfully limited where it effectively grants a monopoly over all uses of a natural law. *See Ultramercial,* 722 F.3d at 1345–46. A patent need not, however, preempt an entire field to run afoul of § 101; instead, the question is whether the patent "would risk disproportionately tying up" the use of the abstract idea. *Prometheus*, 132 S. Ct. at 1294.

Responding to defendants' articulation of the abstract idea underlying the '445 patent, Gametek offers the following examples of activity that would not be preempted by its claims: (1) offering to sell game objects not being dependent upon the user's demographics or tracked activity in the game; (2) purchasing of game objects that interrupt the user's gaming action; (3) interrupting the user's gaming action to supply purchased game objects; or (4) incorporating game object into games. According to Gametek, because the claims are directed to methods which use a programmed computer to effect twelve specific concrete steps, the claims do not wholly preempt third parties from very generally using a computer for gaming or allowing players to purchase additional objects during a game. Gametek does not explain, however, how the claim leaves any meaningful space for a third party to practice the abstract idea of allowing a user to purchase an object for use in the course of game play. Limiting the abstract idea to the field of video games is not enough to make the concept patentable. *See Bilski*, 130 S. Ct. at 3231.

---

[6] The Supreme Court has described the machine-or-transformation test as "a useful and important clue" of patent eligibility. *Bilski*, 130 S. Ct. at 3227. The Court has also stressed that it has "neither said nor implied that the test trumps the 'law of nature' exclusion." *Prometheus*, 132 S. Ct. at 1303. To remain consistent with these statements, *Ultramercial* must be read to say only that the machine-or-transformation test is a useful clue to determine if a claim is meaningfully limited.

Gametek repeatedly emphasizes the "twelve specific steps" articulated in claim one, to suggest either that the underlying abstract idea is not preempted or that the limitations imposed thereon are not overly-generalized, an argument discussed below.  However, these twelve steps are nothing more than a teased-out version of the basic steps of any commercial transaction:  a seller offers an item for sale to an interested and able buyer, the buyer accepts that offer, and the seller then provides the item in exchange for valuable consideration.  While a seller could, of course, offer goods to a potential buyer without prequalifying the buyer or otherwise knowing anything about him or her, to preclude such a common-sense first step would effect a "disproportionate" burden on a third-party's ability to practice the abstract idea.  *See Prometheus*, 132 S. Ct. at 1294, 1302.

### 2. *Insignificant pre- or post-solution activity*

Even if a claim does not preempt all use of the natural law, it is not meaningfully limited if it contains only insignificant "pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Ultramercial*, 722 F.3d at 1346.  Insignificant pre-solution activity includes any "well-understood, routine, conventional activity, previously engaged in by those in the field" as well as "steps that must be taken in order to apply" the abstract idea.  *Prometheus*, 132 S. Ct. at 1299–1300.

With respect to claim 1, defendants argue, "The initial steps (a) to (d) set the stage to perform the abstract idea, then the purchasing steps (e) to (g) break down the process into component steps in a fundamental way.  No matter how subdivided the steps may be to increase the total, the end result leaves no meaningful limitation in any of the steps."  For example, step (a) ("tracking the activity" of a potential buyer) is inherent in identifying potential buyers, just like the claimed step in *Bilski* of "identifying market participants."  130 S. Ct. at 3224.  Step (b) allows potential buyers to create accounts; again, a generic step analogous to the claimed step of "creating a shadow credit record and a shadow debit record" at issue in *CLS Bank*.  717 F.3d at 1285.  Step (c) articulates the method by which a seller permits a buyer to purchase goods by (i) allowing the buyer to select an object; (ii) setting the purchase price of that object; and (iii)

determining whether the buyer has sufficient funds to purchase the selected object at the specified price. While practice of these steps might be facilitated by use of a computer, a computer is not necessary. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("methods which can be performed manually, or which are the equivalent of human mental work, are unpatentable abstract ideas"). Step (d) simply displays the purchase price to the potential buyer.

Finally, the purchasing steps (e to g), by which a practitioner of the claimed method might provide a game object to a user, are akin to the purchasing steps in *Bilski* to provide a commodity to a consumer. The *Bilski* claims recite the step of "initiating a series of transactions between said commodity provider and consumers of said commodity wherein said consumers purchase said commodity at a fixed rate based upon historical averages." 130 S. Ct. at 3223–24. The '445 claims divide that single step into three commonsense components: offering the good at a set price, accepting the offer, and supplying the good to the buyer.

Although the onus is on defendants as the moving parties to demonstrate unpatentability by clear and convincing evidence, Gametek offers no substantive counter-argument. While defendants' arguments are primarily concerned with claim 1, which they characterize as "representative" of the three independent claims, Gametek distinguishes claims 15 and 17 only by noting that these claims lack an element in claim 1 (use of user demographic info) and lack two options in claim 1 (game environment and user demographics). If anything, eliminating these requirements would tend to make claims 15 and 17 more, not less, abstract.

   *3. Overly generalized limitations*

"[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Prometheus*, 132 S. Ct. at 1300. As the Supreme Court explained in *Prometheus*, "Anyone who wants to make use of these laws must first administer a thiopurine drug and measure the resulting metabolite concentrations, and so the combination amounts to nothing significantly more than an instruction to doctors to apply the applicable laws when treating their

patients." *Id.* at 1298. So, too, anyone who wants to sell an item to someone in the course of a game must identify the player as a potential buyer, provide a means by which the buyer may pay for items, determine whether they have sufficient means to execute a purchase, inform them of the price, permit them to purchase the item, and then supply it to them. While these basic facts are broken down with some specificity into the claimed steps, when taken as a whole they are nothing more than the general practice necessary to execute the abstract idea.

### 4. Machine-or-transformation test

"[A] claim is meaningfully limited if it requires a particular machine implementing a process or a particular transformation of matter." *Ultramercial*, 722 F.3d at 1347 (citing *Bilski*, 130 S. Ct. at 3227). "When assessing computer implemented claims, while the mere reference to a general purpose computer will not save a method claim from being deemed too abstract to be patent eligible, the fact that a claim is limited by a tie to a computer is an important indication of patent eligibility." *Id.*, at 1348 (citing *Bilski*, 130 S. Ct. at 3227). "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). Examples of "meaningful limitations" include "the computer being part of the solution, being integral to the performance of the method, or containing an improvement in computer technology." *Ultramercial*, 722 F.3d at 1348. As a decision from this district has previously found, a "general purpose computer programmed in an unspecified manner cannot satisfy the machine-or-transformation test." *Compression Tech. Solutions LLC v. EMC Corp.*, No. 12-1746, 2013 WL 2368039, at *8 (N.D. Cal. May 29, 2013) (citing *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)).

According to Gametek, "The processes [articulated in claim 1] cannot be, and never were, performed by a human absent a computer." That a computer may be faster or more adept at performing these steps compared to a human may be true, but Gametek offers no explanation of why these seemingly obvious steps have never been and could never be performed by a

human. Moreover, the '445 patent provides no description of either the hardware or software of the "programmed computer." Rather, as the Federal Circuit observed in *Dealertrack*, "[t]he claims are silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method." 674 F.3d at 1333. Even if claim 1 were construed, as plaintiff suggests, to apply only to video gaming, the fact that such games are necessarily operated via computers still reveals nothing as to the specification of the computer or how it is part of the solution rather than merely the environment in which the abstract idea is practiced.

In sum, the '445 patent provides no meaningful limitations on the underlying abstract idea. Adopting Gametek's proffered claim construction and construing all well-pleaded facts in its favor, defendants have met their burden to show by clear and convincing evidence that the claims embodied in the '445 patent are unpatentable as an abstract idea.

## V. CONCLUSION

For the above reasons, defendants' motion to dismiss is granted.

IT IS SO ORDERED.

DATED: April 25, 2014

_____
RICHARD SEEBORG
United States District Judge