GIBSON, DUNN & CRUTCHER LLP
Wayne Barsky, SBN 116731
  *wbarsky@gibsondunn.com*
Jason Lo, SBN 219030
  *jlo@gibsondunn.com*
Ellen Lin, SBN 251045
  *elin@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant Zynga

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GAMETEK LLC,

        Plaintiff,

  v.

ZYNGA INC.,

        Defendant.

Case No. C 13-02546 RS DR

**DEFENDANT ZYNGA'S MOTION FOR ATTORNEY FEES**

Hearing Date: August 7, 2014

Hearing Time: 1:30 pm

Courtroom: 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA

Name of Judge: Hon. Richard Seeborg

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 7, 2014 at 1:30 pm in the courtroom of the Honorable Richard Seeborg at Courtroom 3, 17th Floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA, Defendant Zynga will and does hereby move the Court for an award of attorney fees, including nontaxable expenses and interest.

This motion is made pursuant to 35 U.S.C. § 285 because this case is "exceptional" as defined under the statute. GT Gaming f/k/a Gametek LLC asserted a patent that this Court held to be invalid in one of the "rare" instances of dismissal at the pleading stage for lack of patentable subject matter. *See Gametek LLC v. Zynga Inc.*, No. 13-3089 (N.D. Cal. Apr. 25, 2014) (Dkt. Nos. 82 and 83). Not only did GT's case have no strength, GT litigated this case in an unreasonable manner in an effort to drive up litigation costs for Defendants and force settlement on a low-quality (invalid) patent. For example, GT (1) committed misjoinder by including almost two dozen defendants in a single lawsuit contrary to statute, *see Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012) (Dkt. No. 167) (granting Defendants' motion to dismiss under 35 U.S.C. § 299); (2) re-filed suit against all Defendants again in the same venue, thus requiring Defendants to file multiple (successful) motions to transfer, *see, e.g.*, *Gametek LLC v. Zynga Inc.*, No. 12-2933 (S.D. Cal. June 3, 2013) (Dkt. No. 42-1) (granting Defendants' motion to transfer venue to the Northern District of California), *Gametek LLC v. Electronic Arts*, No. 12-2927 (S.D. Cal. July 23, 2013) (Dkt. No. 59) (same); (3) filed a motion to compel discovery based on, as the court found, a "fairly significant misrepresentation," *see Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Nov. 22, 2013) (Dkt. No. 63) (denying GT's motion to compel discovery), *and* Transcript of Hearing at 4, *Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Oct. 21, 2013) (Dkt. No. 92); and (4) repeatedly demanded unreasonable discovery, even after the Court made a tentative ruling invalidating the patent. This motion is based on this Notice of Motion and Motion for Attorney Fees, the attached Memorandum of Points and Authorities, the Declaration of Jason Lo and exhibits thereto, and any other evidence or argument presented by counsel to the Court. A proposed order is included.

**TABLE OF CONTENTS**

Pages

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF THE ISSUE TO BE DECIDED ............................................................. 3

III. STATEMENT OF THE JUDGMENT, STATUTE ENTITLING ZYNGA TO THE AWARD, AND THE AMOUNT SOUGHT ......................................................................... 3

IV. BACKGROUND FACTS ..................................................................................................... 3

V. LEGAL STANDARD ........................................................................................................... 6

VI. ARGUMENT ........................................................................................................................ 9

    1. Zynga is the Prevailing Party ................................................................................... 9

    2. This is an Exceptional Case Under 35 U.S.C. § 285 ................................................ 9

        a. GT's assertion of the validity of the '445 patent lacked substantive strength, as shown by this Court invalidating the patent at the pleading stage, a rare occurrence that satisfies as an exceptional case ............................................................................................................ 9

        b. GT litigated this case in an unreasonable and oppressive manner, providing another ground for an exceptional case finding ............................. 10

            1) GT violated the joinder statute, and the court granted Zynga's motion to dismiss for misjoinder ......................................... 10

            2) GT re-filed suit in the same venue, and the court granted Zynga's motion to transfer venue ......................................................... 11

            3) In at least twenty-five different instances, GT threatened motions to compel and sanctions for alleged discovery violations despite the lack of any discovery deadline, and the court denied GT's motion to compel discovery ........................... 13

VII. CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

<u>Pages</u>

## Cases

*Alice Corporation Pty. v. CLS Bank International*,
   No. 13-298 (June 19, 2014) .................................................................................................. 10

*Lumen View Technology v. Findthebest.com*,
   No. 13-3599, 2014 WL 2440867 (May 30, 2014) .................................................................. 8

*Network Protection Services v. Fortinet*,
   No. 12-1106, 2013 WL 4479336 (N.D.Cal. 2013) ................................................................. 8

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
   572 U.S. __, No. 12-1184 (Apr. 29, 2014) ................................................................ 1, 6, 7, 10

*Ultramercial, Inc. v. Hulu*,
   722 F.3d 1335 (Fed. Cir. 2013) ..................................................................................... 1, 5, 10

## Statutes

35 U.S.C. § 101 ............................................................................................................................ 5, 8
35 U.S.C. § 285 ......................................................................................................................... 1, 3, 6
35 U.S.C. § 299 ...................................................................................................................... 4, 10, 11

## Other Authorities

American Intellectual Property Law Association, *Report of the Economic Survey 2013* ..................... 5

Federal Circuit Chief Judge Randall R. Rader, Colleen V. Chien, and David Hricik,
   *Make Patent Trolls Pay in Court*, The New York Times (June 4, 2013) ............................. 3, 7, 16

I.  **INTRODUCTION**

On April 25, 2014, this Court granted judgment on the pleadings in favor of Defendant Zynga because Plaintiff GT Gaming f/k/a Gametek LLC's asserted patent is invalid for lack of patentable subject matter. As the prevailing party, Zynga seeks attorney fees allowed by the patent statute for an "exceptional case." *See* 35 U.S.C. § 285.

Recently, the Supreme Court removed the constraints the Federal Circuit had imposed on district courts' discretion to award § 285 attorney fees and explained that a wider universe of scenarios would fall under the statute's definition of "exceptional." In particular, the Supreme Court identified two types of cases that would each satisfy the § 285 standard: (1) "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case)" or (2) "the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (Apr. 29, 2014). The Supreme Court held that "exceptional" in the statute has its ordinary meaning: "rare." *Id.* Nothing else constrains district courts from awarding fees under § 285. *Id*.

The standard is satisfied here for two independent reasons. ***First***, the lack of substantive strength of GT's assertion of Patent No. 7,076,445 is shown by this Court's Order invalidating the patent at the pleading stage for lack of patentable subject matter. Both this Court and the Federal Circuit have noted that such dismissals are warranted only in "rare" cases. *See Gametek LLC v. Zynga Inc.*, No. 13-2546, at *4 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 82) (quoting *Ultramercial, Inc. v. Hulu*, 722 F.3d 1335 (Fed. Cir. 2013)). Further, as the Court recognized, GT provided "no meaningful alternative," "no substantive counter-argument," and "no explanation" on the § 101 inquiry in response to Zynga's motion. *Id.* at *6, 7, 9, 10.

***Second***, this case is also exceptional because, in a thinly veiled attempt to force a nuisance settlement, GT's improper litigation demands drove up Zynga's costs in defending the litigation. GT is a non-practicing entity and subsidiary of the massive patent assertion entity Acacia. As evidenced by its litigation conduct, GT's business plan from the start was to purchase a low value (really, no value) patent at a cheap price, assert that patent against a slew of productive companies spanning an entire industry, and drive up litigation costs to extract settlements individually lower than the cost of

each defendant defending litigation but in the aggregate more than GT's cost to purchase the patent in the first place. And, the strategy worked. By the time the patent was ruled invalid, GT had already extracted individual settlements at well below the average cost of defense from ten of the fourteen[1] defendant companies it sued for an aggregate amount that far exceeds what it paid for the now-invalid patent.

GT's attempts to litigate irrespective of the merits of its case and to escalate litigation costs to Zynga were replete throughout this litigation: committing blatant misjoinder; re-filing its suit against the same defendants in the same inconvenient venue thus forcing each to move for transfer; filing a motion to compel discovery based on, as the Judge found, a "fairly significant misrepresentation" to the court; and, even after being chastised by the court, continuing to threaten (without basis) to compel discovery more than a dozen times.

Perhaps no better example of GT's improper litigation strategy is its actions after this Court made its tentative ruling on the merits against GT at the hearing on Zynga's motion for judgment on the pleadings. Remarkably, with a likely dispositive ruling against it and no discovery deadline set, GT *increased* its demands for discovery. The morning after the hearing, GT's counsel demanded depositions of Zynga witnesses on seventy-three Rule 30(b)(6) topics on twenty accused products on an expedited basis (within the next three weeks) and attempted to add an entirely new accused product to the case. Likewise, GT's counsel wanted to depose a defendant in a related case, Electronic Arts, on seventy-four Rule 30(b)(6) topics on nine accused products.

There is simply no rational explanation for GT's discovery demands other than one last effort to force settlement discussions by threatening to impose on Defendants substantial litigation costs before the Court invalidated the patent. While egregious, GT's actions are not surprising, as GT's strategy was never based on the strength of the '445 patent in the first place.

Because GT's actions throughout the litigation forced Zynga to incur unnecessary costs and attorney fees, Zynga seeks reimbursement in defending against a lawsuit that had no substantive

---

[1] This number combines related entities, excludes companies GT voluntarily dismissed, and includes companies sued outside of the original misjoined case.

strength and was fraught with GT's unreasonable litigation demands to drive up Zynga's litigation costs in hopes of forcing Zynga to settle rather than bear the cost of litigation. GT should not be rewarded (as it has already leveraged several settlement payments by asserting an invalid patent) for its unreasonable litigation tactics.

## II.   STATEMENT OF THE ISSUE TO BE DECIDED

Pursuant to Civil L.R. 7-4, the issue to be decided is whether GT's actions in initiating this litigation to assert Patent No. 7,076,445 as well as the manner it litigated this case make this an "exceptional case" under 35 U.S.C. § 285, thereby justifying an award of reasonable attorney fees to Zynga as the prevailing party.

## III.   STATEMENT OF THE JUDGMENT, STATUTE ENTITLING ZYNGA TO THE AWARD, AND THE AMOUNT SOUGHT

Pursuant to Fed. R. Civ. P. 54(d)(2)(B), the judgment and statute entitling Zynga to an award of attorney fees is this Court's April 25, 2014, Order Granting Motions For Judgment On The Pleadings (Dkt. No. 82) and Judgment (Dkt. No. 83) and 35 U.S.C. § 285. Zynga seeks the amount identified in the attached Declaration of Jason Lo.

## IV.   BACKGROUND FACTS

GT is a subsidiary of Acacia, a large, publicly-traded, and well-known patent assertion entity. *See* Acacia Research Corporation: About Us, http://acaciaresearch.com/about-us/ (last visited June 30, 2014). Acacia claims to be the "industry leader in patent licensing" and touts its "deep legal and technology expertise" to "unlock financial value" in patents. *See id.*

GT itself is a non-practicing entity, *see Gametek LLC v. Zynga Inc.*, No. 12-2933, at *5, 7 (S.D. Cal. June 3, 2013) (Dkt. No. 42-1), meaning that it has never provided any products to market. *See* (then-Chief Judge of the Federal Circuit) Randall R. Rader, Colleen V. Chien, and David Hricik, Op-Ed., *Make Patent Trolls Pay in Court*, N.Y. Times, June 4, 2013, at A5 (2013 WLNR 13756999) ("Their business plan is simple: trolls (intellectual-property lawyers use less evocative terms like 'non-practicing entities' and 'patent-assertion entities') make money by threatening companies with expensive lawsuits and then using that cudgel, rather than the merits of a case, to extract a financial settlement.") (Exhibit 1).

1      All within a span of a few months, Acacia purchased the '445 patent, created GT, assigned the '445 patent to GT, then (through GT) asserted litigation based on the '445 patent.  *See* Agreement between Theados Corporation and Acacia Research Group ▮▮▮▮▮▮▮ (Acacia purchasing the '445 patent) (GAMETEK001405 to GAMETEK001423) (Exhibit 2); Secretary of State Articles of Organization: Gametek LLC (Dec. 14, 2011) (GAMETEK002009 to GAMETEK002010) (Exhibit 3); Assignment and Assumption Agreement between Acacia Research Group and Gametek LLC (Acacia assigning '445 patent to Gametek) ▮▮▮▮▮▮▮ (GAMETEK002066 to GAMETEK002068) (Exhibit 4).  Specifically, Acacia and GT purchased the '445 patent for ▮▮▮▮ and recorded the assignment in February 2012, roughly six years after the patent issued.  *See* Agreement between Theados Corporation and Acacia Research Group LLC (GAMETEK001407) (Exhibit 2).  To this day, GT's only asset is the '445 patent.

      That same month, GT filed a single lawsuit against twenty-two competing mobile game developers, online game developers, and social media providers, including Zynga, in the Southern District of California, alleging infringement of the '445 patent.  *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Feb. 28, 2012) (Dkt. No. 1).

      The Defendants, including Zynga, filed a motion to dismiss for improper joinder under 35 U.S.C. § 299.  The court *granted* Defendants' motion and dismissed the case.  *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012) (Dkt. No. 167) (Order Granting Motion to Dismiss under 35 U.S.C. § 299 and Fed. R. Civ. P. 21).

      The same day the parties received notice of the dismissal,[2] GT filed a second lawsuit, again in the Southern District, asserting the same '445 patent against Zynga.  *Gametek LLC v. Zynga Inc.*, No. 12-2933 (S.D. Cal. Dec. 10, 2012) (Dkt. No. 1).  Zynga filed a motion to transfer venue to the Northern District.  The court *granted* Zynga's motion.  *Gametek LLC v. Zynga Inc.*, No. 12-2933 (S.D. Cal. June 3, 2013) (Dkt. No. 42).

      A few months after transfer to the Northern District and with no discovery deadline set, GT

---

[2] Though the Order is dated December 7 and the docket entry currently states the same, the Order was not entered until December 10 and the parties did not receive the ECF notice until that day.  *See* Email from ECF to Zynga's counsel (Dec. 10, 2012 1:28 p.m. PT) (Exhibit 44).

filed a motion to compel discovery asserting that Zynga had been dilatory in producing documents. In *denying* GT's motion, the court observed GT had made a "fairly significant misrepresentation" to the court. *See Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Nov. 22, 2013) (Dkt. No. 63), and Transcript of Hearing at 4, *Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Oct. 21, 2013) (Dkt. No. 92).

Shortly after the parties exchanged proposed claim constructions, Zynga filed a motion for judgment on the pleadings because the '445 patent was invalid under 35 U.S.C. § 101 for lack of patentable subject matter. At the April 24, 2014 hearing, this Court issued a tentative ruling in favor of granting Zynga's motion. The next day, this Court issued an Order granting Zynga's motion and entering judgment in favor of Zynga—ending the case. *See Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 82).

In granting Zynga's motion, this Court observed that "this appears to be the *rare* case in which the defendants have met their burden at the pleadings stage to show by clear and convincing evidence that the '445 patent claims an unpatentable abstract idea." *Id.* at *1-2 (emphasis added). This Court cited the Federal Circuit's holding that "it will be *rare* that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." *Id.* at *4 (citing *Ultramercial*, 722 F.3d at 1338 (emphasis added)). This Court relied on the fact that, in response to Zynga's arguments, GT provided "no meaningful alternative," "no substantive counter-argument," and "no explanation" on the Supreme Court's guideposts in the § 101 inquiry. *Id.*

Prior to the Court's invalidation of the '445 patent, GT's litigation campaign against the game industry netted settlement agreements with ten defendants[3] out of the fourteen sued. Of the five settlement agreements produced by GT to Zynga in this case, no defendant paid more than ■—far less than a settlement amount reflecting a belief in the strength of a patent and far less than the average cost to defend a litigation[4]—yet GT's litigation strategy in the aggregate has earned

---

[3] All the defendants who settled were non-public companies with fewer litigation resources than Zynga. Also see footnote 1.

[4] The median cost to defend a patent infringement suit against a non-practicing entity is $2 million. *See* American Intellectual Property Law Association, *Report of the Economic Survey 2013*, at 35
*(Cont'd on next page)*

it ███ in settlement fees.  *See* Backflip settlement agreement (GT408000368-000375) (Exhibit 5); Playforge settlement agreement (GT408000376-000386) (Exhibit 6); 6Waves settlement agreement (GT408000387-000396) (Exhibit 7); NHN settlement agreement (GT408000397-000407) (Exhibit 8); Gameview settlement agreement (GT408000586-000596) (Exhibit 9).  As it stands now, Acacia's settlement fees far exceed the price that it paid for the '445 patent ███.  *See* Agreement between Theados Corporation and Acacia Research Group LLC (GAMETEK001407) (Exhibit 2).

## V.     LEGAL STANDARD

In patent suits, the "court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Until recently, the Federal Circuit had imposed heavy restrictions on what could constitute an exceptional case.  But in April of this year, in *Octane Fitness*, the Supreme Court changed the standard for what constitutes an "exceptional case" under § 285 by rejecting those restrictions.  The Court held there is "one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane*, 134 S. Ct. at 1755-56 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").  In other words, the "analysis begins and ends with the text of § 285." *Id.*

The Supreme Court construed "exceptional" in "accordance with its ordinary meaning": "***rare***." *Id.* (emphasis added).  "In 1952, when Congress used the word in § 285 (and today, for that matter), exceptional meant uncommon, ***rare***, or not ordinary." *Id.* (emphasis added; quotation marks omitted).  The Court explained an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

---

*(Cont'd from previous page)*

(Exhibit 10). As support for the accuracy of this number, to-date the fees and costs to Zynga are nearly $800,000 (a lower number than sought in this motion, which does not include, *e.g.*, expert fees) even though this case was only in its infancy when the Court entered judgment against GT: only partial claim construction briefing and no claim construction hearing, no final expert reports, and no trial. Zynga's high cost of defense is unsurprising, given the aggressive and unreasonable litigation tactics GT utilized to drive up costs.

In explaining the new standard, the Supreme Court rejected the Federal Circuit's prior restrictions as "overly rigid." *Id.* For example, the Federal Circuit's requirement of "material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions" actually rose to the level of independently sanctionable conduct. *Id.* at 1754. But, as § 285 cannot be superfluous to other fee-shifting provisions, the Supreme Court held that § 285 must cover conduct that would *not* otherwise rise to independently sanctionable conduct—such as under Rule 11 or the courts' inherent power to deal with "willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1758.

Another test the Supreme Court rejected as "too restrictive" is the Federal Circuit's two-part test requiring the litigation be *both* objectively baseless *and* brought in subjective bad faith. *Id.* at 1757. The Court stated § 285 could cover, for instance, scenarios with only one of those two parts: the scenario where the litigation is objectively baseless (but *not* brought in subjective bad faith) and the scenario where the litigation is brought in subjective bad faith (but *not* objectively baseless). *Id.*

Last, the Supreme Court rejected the Federal Circuit's imposition of a "clear and convincing evidence" standard of proof for § 285. The statute only recites a "simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Id.* at 1758.

The Supreme Court ruling in *Octane Fitness* is consistent with the view that § 285 is a tool to correct the damage caused by non-practicing entities that plague the court system and productive businesses. As explained by Chief Judge Rader, the "onslaught of litigation" brought by non-practicing entities has "slowed the development of new products, increased costs for businesses and consumers, and clogged our judicial system." *See* Rader et al., *supra*. And generally the judicial system provides a strategic advantage for such companies that do not make any products, because they need not fear a patent infringement counterclaim, need not be concerned with their employees being distracted from a core business of making products, and "when they lose a case, after all, they are typically out little more than their own court-filing fees." *Id.*

But § 285 provides a remedy: "Section 285 of the Patent Act, as well as Rule 11 of the

Federal Rules of Civil Procedure, give judges the authority they need to shift the cost burden of litigation abuse from the defendant to the troll." *Id.*; *see also Network Prot. Servs. v. Fortinet*, No. 12-1106, 2013 WL 4479336, at *1 (N.D. Cal. 2013) (quoting same). By looking for signs "that a patent lawsuit was pursued primarily to take improper advantage of a defendant—that is, using the threat of litigation cost, rather than the merits of a claim, to bully a defendant into settling," judges have "the authority to stop it." *See* Rader et al., *supra*. Chief Judge Rader ended with the following exhortation: "We urge them to do so." *Id.*

In one of the first decisions awarding § 285 fees following *Octane Fitness*, the court in the Southern District of New York embraced its role in deterring patent troll litigation and deemed such an action the "prototypical exceptional case." *Lumen View Tech. v. Findthebest.com*, No. 13-3599, 2014 WL 2440867, at *1, 7 (S.D.N.Y. May 30, 2014). The plaintiff in *Lumen*, a "patent holding non practicing entity that acquires patents and instigates patent infringement lawsuits" and that "appears to be a shell company that is one of a number of related companies involved in litigating patent infringement suits," asserted a computer-implemented method patent. *Id.* The court invalidated the patent under 35 U.S.C. § 101 as an abstract idea. *Id.* at *2.

The court then granted the motion for attorney fees under § 285 because, among other things:

> Lumen's motivation in this litigation was to extract a nuisance settlement from FTB on the theory that FTB would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation. Lumen never sought to enjoin FTB from the allegedly infringing conduct in its prayer for relief. Lumen's threats of "full-scale litigation," "protracted discovery," and a settlement demand escalator should FTB file responsive papers, were aimed at convincing FTB that a pay-off was the lesser injustice.

*Id.* at *6.

The court in *Lumen* held that *Octane Fitness* supported an exceptional case finding because of the importance of deterring such predatory suits: "Lumen's instigation of baseless litigation is not isolated to this instance but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits." *Id.* at *7. The court cited as evidence the number of substantially similar lawsuits the plaintiff had filed within a short time frame, the boilerplate nature of the complaints, and the absence of reasonable pre-suit investigation. *Id.* "The need to advance considerations of

1  deterrence of this type of litigation behavior is evident." *Id.*

2  **VI.    ARGUMENT**

3      **1.    Zynga is the Prevailing Party**

4  This Court's April 25, 2014 Order Granting Motions For Judgment On The Pleadings (Dkt. No. 82) and Judgment (Dkt. No. 83) make Zynga the prevailing party in this case. GT recovered none of the relief sought in its complaint against Zynga. During the meet and confer for this motion, GT's counsel stated it does not dispute that Zynga is the prevailing party. Jason Lo Declaration, ¶ 2.

8      **2.    This is an Exceptional Case Under 35 U.S.C. § 285**

9  This case meets the definition of "exceptional" under § 285. A judgment on the pleadings invalidating a patent based on lack of patentable subject matter is itself rare and justifies an exceptional case finding, particularly here where GT had no substantive response to Zynga's motion. In addition, GT has litigated in an unreasonable manner to coerce settlements irrespective of the merits of its case, confirming this case is not common.

Despite its patent being ruled invalid, GT and its parent company Acacia have nevertheless had a successful litigation campaign against the game industry. Based on the five settlement agreements produced by GT in this case, GT has profited ■■■■ more than it paid for the '445 patent. Without a § 285 ruling against it, GT (Acacia) is not the "prevailing party" only in legal terms, not financially, as it has reaped a handsome profit from its business strategy of burdening productive companies, like Zynga, with a cheap (and invalid) patent combined with unreasonable litigation demands.

Section 285 is the tool to stop such harmful behavior. Zynga merely seeks reimbursement for its attorney fees in defending against a lawsuit that should not have been brought at all and was unreasonably litigated by GT to extract an unwarranted settlement. The remedial purpose of § 285 is to compensate Zynga as the prevailing party for fees incurred.

        **a.    GT's assertion of the validity of the '445 patent lacked substantive strength, as shown by this Court invalidating the patent at the pleading stage, a rare occurrence that satisfies as an exceptional case**

As the Federal Circuit recently held, invalidating a patent at the pleading stage for lack of

1 patentable subject matter is a "*rare*" occurrence. *Ultramercial*, 722 F.3d at 1338 (emphasis added).

2 In granting Zynga's motion in that same scenario, this Court echoed that sentiment: "this appears to be the *rare* case in which the defendants have met their burden at the pleadings stage to show by clear and convincing evidence that the '445 patent claims an unpatentable abstract idea." *See Gametek LLC v. Zynga Inc.*, No. 13-2546, at *1, *4 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 82) (citing *Ultramercial*, 722 F.3d at 1338) (emphasis added).[5]

Further, GT had two opportunities—in its opposition brief and at the hearing—to answer the fundamental § 101 inquiry: what meaningful limitations exist in the claims in addition to the abstract idea? This Court considered those arguments and rejected every one in its detailed Order. In doing so, this Court noted GT's lack of substantive responses to the § 101 analysis. *See id.* at *6, *7, *9, *10 (stating that GT provided "no meaningful alternative," "no substantive counter-argument," and "no explanation" on the § 101 inquiry).

In short, this is a "rare" case and, by definition, is exceptional under § 285. *See Octane Fitness*, 134 S. Ct. at 1756 ("In 1952, when Congress used the word in § 285 (and today, for that matter), exceptional meant uncommon, *rare*, or not ordinary." (emphasis added)).

### b. GT litigated this case in an unreasonable and oppressive manner, providing another ground for an exceptional case finding

This case is "exceptional" under § 285 for another, independent reason: GT litigated in an unreasonable and oppressive manner, as shown by GT's blatant misjoinder of multiple defendants, its subsequent re-filing in an inconvenient venue, and its filing of a meritless motion to compel.

#### 1) GT violated the joinder statute, and the court granted Zynga's motion to dismiss for misjoinder

The joinder statute for patent cases, 35 U.S.C. § 299, is straightforward: "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in

---

[5] The Supreme Court's unanimous decision in *Alice Corporation Pty. v. CLS Bank International*, No. 13-298 (June 19, 2014) recently confirmed that this Court's decision is correct.

suit." Yet, GT originally filed its lawsuit alleging the sole '445 patent against twenty-two competing mobile game developers, online game developers, and social media providers, and more than a dozen different accused products.

GT's stated basis for joining all Defendants in a single suit was Facebook's purported involvement in all of the accused products. *See Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Feb. 28, 2012), ¶ 17. But that allegation had no basis in reality, as shown by (1) the lack of facts supporting it in the Complaint, *id.*, (2) the fact that GT did not even file an opposition to Facebook's motion to dismiss, *id.* at Dkt. No. 120 (GT Response to Facebook Motion to Dismiss), and (3) GT's dismissal of Facebook from the case, *id.* at Dkt. No. 119 (GT Notice of Voluntary Dismissal of Facebook). Moreover, Defendants explained to GT on multiple occasions that GT's suit improperly joined Defendants in contravention of the joinder statute, but GT chose to ignore the statute's requirements and press forward. *See, e.g., id.* at Dkt. No. 51 (Answer, ¶ 17); Email from Zynga's counsel to GT's counsel (Apr. 30, 2012, 3:00 p.m. PT) (Exhibit 11); Email from Zynga's counsel to GT's counsel (May 2, 2012, 11:23 a.m. PT) (Exhibit 12); Email from GT's counsel to Zynga's counsel (May 3, 2012, 8:12 a.m. PT) (Exhibit 13).

As expected, the court in the Southern District dismissed GT's case because of misjoinder, *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Dec. 7, 2012), at Dkt. No. 167 (Order Granting Motion to Dismiss under 35 U.S.C. § 299 and Fed. R. Civ. P. 21), but not before Zynga, among other Defendants, was forced to incur unnecessary attorney fees and costs in researching and drafting a motion to dismiss.[6]

### 2) GT re-filed suit in the same venue, and the court granted Zynga's motion to transfer venue

After having its case dismissed because of misjoinder, GT tried to get the same result by immediately filing complaints against the same Defendants in the same venue (again, the Southern District of California). Ignoring whether each Defendant (or even GT itself) actually had ties to the

---

[6] Zynga does not seek fees incurred related to GT's misjoinder because it occurred in the original, dismissed case. These facts are provided only to reveal the full story of GT's litigation misconduct.

Southern District, GT forced each Defendant to move to transfer venue. Indeed, almost all Defendants were similarly situated with no meaningful connections to the Southern District and successfully moved to transfer venue.

Facts either publicly-available or known to GT showed that few Defendants had sufficient ties to the Southern District. For example, in granting Zynga's motion to transfer, the court observed that neither GT nor the attorneys who prosecuted the '445 patent nor the alleged inventor of the '445 patent reside in the Southern District—all facts within GT's knowledge when it chose to file suit in the Southern District. *See Gametek LLC v. Zynga Inc.*, No. 12-2933 (S.D. Cal. June 3, 2013) (Dkt. No. 42-1). As to Zynga specifically, publicly-available facts (to which GT had access and either knew or should have known) show that Zynga's headquarters and principal place of business are in the Northern District of California not the Southern District. *See id.*

Moreover, even when the court started granting Defendants' motions to transfer one-after-another, GT refused to reconsider its position. For example, GT argued that each Defendant delayed filing its motion to transfer for almost a year. The court rejected that argument (repeatedly) because (1) GT improperly used the original filing date of the misjoined case, from which Defendants were dismissed, and (2) GT is a non-practicing entity and thus would not lose sales during the pendency of the actions. *See, e.g.*, *Gametek LLC v. RockYou, Inc.*, No. 12-2936, at *4 (S.D. Cal. Mar. 12, 2013) (Dkt. No. 26-1); *Gametek LLC v. Zynga Inc.*, No. 12-2933, at *6-7 (S.D. Cal. June 3, 2013) (Dkt. No. 42-1); *Gametek LLC v. Funzio, Inc.*, No. 12-2928, at *6 (S.D. Cal. June 28, 2013) (Dkt. No. 42); *Gametek LLC v. Electronic Arts*, No. 12-2927, at *6 (S.D. Cal. July 23, 2013) (Dkt. No. 59).

GT also argued venue was proper in the Southern District because all of its documents are in the *Central* District and the majority of documents from both sides would be exchanged electronically. Again, the court repeatedly rejected that argument because (1) GT filed its suit in the Southern District not Central District, (2) GT is a non-practicing entity and is unlikely to have a large number of documents to produce, (3) the center of gravity of the dispute is where the defendant is located, and (4) the prevalence of electronic documents meant GT also would have no additional burden if the case were transferred. *See, e.g.*, *Gametek LLC v. Gameview Studios, LLC,* No. 12-499, at *4 (S.D. Cal. Dec. 4, 2012) (Dkt. No. 47); *Gametek LLC v. RockYou, Inc.*, No. 12-2936, at *4-5

(S.D. Cal. Mar. 12, 2013) (Dkt. No. 26-1); *Gametek LLC v. Zynga Inc.*, No. 12-2933, at *5-6 (S.D. Cal. June 3, 2013) (Dkt. No. 42-1); *Gametek LLC v. Funzio, Inc.*, No. 12-2928, at *5 (S.D. Cal. June 28, 2013) (Dkt. No. 42); *Gametek LLC v. Electronic Arts*, No. 12-2927, at *5-6 (S.D. Cal. July 23, 2013) (Dkt. No. 59); *Gametek LLC v. Crowdstar International Limited*, No. 12-2931, at *5-6 (S.D. Cal. July 25, 2013) (Dkt. No. 32).

By the second time—and certainly by the seventh time—the court rejected GT's arguments, GT knew its arguments were losers but pressed on in any event, thereby needlessly increasing the attorney fees and costs to Defendants and the burden on the court.

### 3) In at least twenty-five different instances, GT threatened motions to compel and sanctions for alleged discovery violations despite the lack of any discovery deadline, and the court denied GT's motion to compel discovery

GT's actions required Zynga, among other Defendants, to incur costs and attorney fees in defending against discovery demands such as a motion to compel, including time spent meeting-and-conferring with GT's counsel, drafting an opposition to GT's motion, and attending the hearing to oppose GT's motion. Those costs and attorney fees should be reimbursed by GT.

Over the course of the litigation, GT threatened a motion to compel in at least twenty-five emails and with respect to at least twelve different discovery categories. *See* Email (Nov. 14, 2012 1:00 p.m. PT) (Exhibit 14); Email (Nov. 15, 2012 7:58 a.m. PT) (Exhibit 15); Email (Nov. 23, 2012 10:20 a.m. PT) (Exhibit 16); Email (Nov. 27, 2012 3:07 p.m. PT) (Exhibit 17); Email (Feb. 15, 2013, 3:38 p.m. PT) (Exhibit 18); Email (Feb. 18, 2013, 11:31 p.m. PT) (Exhibit 19); Email (Feb. 20, 2013, 10:00 a.m. PT) (Exhibit 20); Email (Apr. 10, 2013, 5:30 p.m. PT) (Exhibit 21); Email (Apr. 10, 2013, 8:51 p.m. PT) (Exhibit 22); Email (May 21, 2013 11:00 a.m. PT) (Exhibit 23); Email (May 29, 2013, 7:24 p.m. PT) (Exhibit 24); Email (May 31, 2013 2:16 p.m. PT) (Exhibit 25); Email (July 1, 2013 3:15 p.m. PT) (Exhibit 26); Email (Aug. 3, 2013 8:22 a.m. PT) (Exhibit 27); Email (Aug. 5, 2013 7:42 a.m. PT) (Exhibit 28); Email (Sep. 19, 2013 11:54 a.m. PT) (Exhibit 29); Email (Sep. 22, 2013 8:20 p.m. PT) (Exhibit 30); Email (Sep. 24, 2013 7:38 p.m. PT) (Exhibit 31); Email (Oct. 18, 2013 3:02 p.m. PT) (Exhibit 32); Email (Oct. 30, 2013 4:17 p.m. PT) (Exhibit 33); Email (Nov. 5, 2013

1:37 p.m. PT) (Exhibit 34); Email (Nov. 13, 2013 8:36 p.m. PT) (Exhibit 35); Email (Mar. 22, 2014 3:57 p.m. PT) (Exhibit 36); Email (Mar. 26, 2014 11:03 a.m. PT) (Exhibit 37); Email (Apr. 11, 2014 5:29 p.m. PT) (Exhibit 38).[7]

GT even threatened to seek sanctions against Zynga. *See* Email from GT's counsel to Zynga's counsel (Apr. 11, 2014 5:29 p.m. PT) (Exhibit 38) (This occurred after both parties had filed their motion for judgment on the pleadings papers.); *see also* Email from GT's counsel to EA's counsel (Aug. 5, 2013 7:42 a.m. PT) (Exhibit 28). When GT ultimately filed a motion to compel, which presumably presented its strongest case among its multitude of demands, the court not only rejected GT's motion but observed that GT made a "*fairly significant misrepresentation*" to the court. *See Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Nov. 22, 2013) (Dkt. No. 63) and Transcript of Hearing at 4, *Gametek LLC v. Zynga Inc.*, No. 13-2546 (N.D. Cal. Oct. 21, 2013) (Dkt. No. 92) (emphasis added).

As explained in the Order, GT's motion claimed Zynga was dilatory, but there had not yet been a discovery deadline set, Zynga had already produced the majority of its core documents, and Zynga had already agreed to produce the documents at issue. Specifically, the court held (1) Zynga had appropriately phased the production of documents by prioritizing those that are relevant to the core issues of alleged infringement and damages (Zynga had already made available for inspection all source code for the twenty accused games and produced all requested financial information for the nineteen original games, and Zynga planned on producing the financial information for the final game within a week), (2) Zynga's representations regarding further search and production efforts are reasonable (Zynga was already collecting and planned on producing documents for the two remaining categories of documents on a rolling basis as they become available), and (3) the *Markman* hearing was not scheduled to take place for over half a year and the court had yet to set a discovery cut-off date. *See id.* There was no reason for GT's unnecessary discovery demands.

---

[7] Zynga's motion includes references to GT's litigation misconduct against EA. Similarly, EA's motion includes references to GT's litigation misconduct against Zynga. This is to provide the Court with the full picture of GT's patent assertion behavior across an industry as well as because the documents supporting the attorney fees overlap due to the joint defense group splitting costs.

1       Further, after the court's denial of GT's motion to compel, GT continued its unreasonable litigation demands. It served a convoluted list of seventy-three 30(b)(6) topics spanning 127 pages on over twenty accused products. *See* Plaintiff's Rule 30(b)(6) Notice to Zynga (Exhibit 39). Despite having Zynga's financial information showing the relative success of each accused product, GT refused to prioritize the accused products or drop any from the case, even though it could never litigate to trial such a large number of accused products. *See* Email chain from GT's counsel to Zynga's counsel (Apr. 16, 2014, 11:37 a.m. PT), Zynga's counsel to GT's counsel (Apr. 14, 2014, 5:46 p.m. PT), and GT's counsel to Zynga's counsel (Apr. 11, 2014, 5:29 p.m. PT) (Exhibit 40). And while Zynga would have likely needed to offer forty-two deponents to cover the seventy-three topics (two witnesses per accused product plus one financial person), GT continued its demands and sought a continuous, open deposition that would continue indefinitely. At this point, there was still no discovery deadline set.

Even after this Court's tentative ruling on the merits in favor of Zynga's motion for judgment on the pleadings to end the case entirely, within hours of the hearing GT reiterated its demand for Zynga to present all witnesses for deposition with no change in schedule and even sought to add an additional accused product. Specifically, at the end of the hearing, GT's counsel seemed to acknowledge that it would not make sense to go forward with depositions, in light of the Court's tentative ruling, and he did not want to waste anyone's time. This of course is the most reasonable conclusion. However, consistent with the way it had litigated the case from day one, GT sent emails the next day pressing for discovery at full-steam:

- The morning after the hearing, at 8:17 a.m., GT's counsel gave notice of its intent to add a new accused product to this case.

- About one hour later, GT's counsel gave notice of its intent to continue with several scheduled depositions and also demanded to depose dozens of additional Zynga employees on the remaining accused games and topics, all before May 12, 2014. In other words, *after* the Court gave a tentative ruling invalidating the patent (and no indication to the contrary), GT demanded expedited depositions of Zynga's witnesses on seventy-three Rule 30(b)(6) topics on twenty accused products, all to occur within three weeks.

- At the same time, GT gave notice to defendant EA of its intent to take its Rule 30(b)(6) depositions on seventy-four topics on nine accused products no later than June 25, 2014.

*See* Email from GT's counsel to Zynga's counsel (Apr. 25, 2014, 8:17 a.m. PT) (Exhibit 41); Email from GT's counsel to EA's counsel (Apr. 25, 2014, 9:02 a.m. PT) (Exhibit 42); Email from GT's counsel to Zynga's counsel (Apr. 25, 2014, 9:19 a.m. PT) (Exhibit 43).

In short, this is a prime example of a "sign that a patent lawsuit was pursued primarily to take improper advantage of a defendant—that is, using the threat of litigation cost, rather than the merits of a claim." *See* Rader et al., *supra*. As it had a tentative ruling against the merits of its claim, GT's actions did not reflect zealous advocacy. Rather, without any regard for the merits of its claim, GT sought merely to increase Zynga's costs.

## VII. CONCLUSION

For the foregoing reasons, and based on the totality of the circumstances, Zynga respectfully requests that the Court exercise its discretion to find this case "exceptional" and award Zynga's attorney fees in accordance with § 285. Without such a ruling, GT (Acacia) will profit from its unreasonable litigation conduct in this case and will be incentivized to continue its (winning) formula in future litigation campaigns.

Dated: June 30, 2014                          Respectfully submitted,

                                              JASON LO
                                              GIBSON, DUNN & CRUTCHER LLP

                                              By: /s/ Jason Lo

                                              Attorneys for Defendant Zynga