IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GAMETEK LLC,

        Plaintiff,

  v.

ZYNGA, INC.,

        Defendant.

No. CV 13-2546 RS

(Related to Case Nos. CV-13-3089-RS, CV-13-3472-RS, CV-13-3493-RS)

**ORDER DENYING DEFENDANTS' MOTIONS FOR ATTORNEY FEES**

## I. INTRODUCTION

Plaintiff Gametek LLC ("GT") brought an action for infringement of U.S. Patent No. 7,076,445 ("the '445 patent") against several defendants, including Zynga Inc., Funzio Inc., Electronic Arts Inc., and Crowdstar International Limited. Defendants' motions for judgment on the pleadings were granted based on a finding that the asserted patent was invalid because it claimed an unpatentable abstract idea. The four defendants who remained in the case at the time judgment was entered now move for an award of attorney fees pursuant to 35 U.S.C. § 285, characterizing this as an "exceptional" case meriting fee shifting based both on the substantive strength of GT's claims and the manner in which it litigated this matter. In that the "exceptional" label is not warranted here even under the more expansive standard articulated by the Supreme

Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), defendants' motions must be denied.

## II.  BACKGROUND

GT is a subsidiary of Acacia Research Group LLC ("Acacia"); both are non-practicing entities. Through Acacia, GT acquired the '445 patent from its prior owner, Theados Corporation, in October 2011. As recounted in the prior Order, the patent claimed a method by which a game operator could offer additional items to players for purchase mid-game without interrupting play. Four months after acquiring the '445 patent, GT filed suit in the Southern District of California against 22 defendants, including the four remaining defendants in this matter. *Gametek LLC v. Facebook, Inc.*, No. 12-501 (S.D. Cal. Feb. 28, 2012). Following an Early Neutral Evaluation conference with Facebook, GT voluntarily dismissed its claims against that entity and then joined defendants to file a joint motion to sever. Rather than severing the claims, the court exercised its discretion to dismiss the remaining defendants. *Gametek LLC v. Facebook, Inc.*, No. 12-501, Dkt. No. 167 (S.D. Cal. Dec. 7, 2012).

Three days later, GT re-filed separate complaints against fourteen of the original defendants in the Southern District of California. That court eventually transferred all those actions on motion by the defendants: one to the Central District, where GT is headquartered, and the remainder to this district.[1] GT eventually settled with ten of those fourteen defendants.[2]

Four defendants (Zynga, Electronic Arts, Crowdstar, and Funzio) did not settle and instead moved for judgment on the pleadings, arguing the '445 patent is invalid because it claims an unpatentable abstract idea. Though noting the Federal Circuit's admonition that "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter," *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013), this Court granted judgment on the pleadings.

---

[1] It appears that one motion to transfer was withdrawn, and the case settled, while it was still pending before the Southern District.
[2] The numbers referenced above are taken from Zynga's motion for attorney fees. In a declaration submitted in support of Zynga's reply, attorney Jason Lo states that GT has settled with twenty-one defendants.

As an initial matter, the Court agreed with defendants that the '445 patent embodied the abstract idea of allowing players to purchase additional objects during game play. The Court then considered whether the patent claims contained sufficient "inventive concept" to transform that unpatentable abstract idea into a patentable application. *See Ultramercial*, 722 F.3d at 1343–44. Every patent is assumed to be properly issued; therefore, the party challenging the patent must establish by clear and convincing evidence the claims are not meaningfully limited to find a patent covers ineligible subject matter. *See id.*, at 1342, 1338–39. The Court concluded this standard was satisfied as the '445 patent provides no meaningful limitations on the underlying abstract idea.

## III. DISCUSSION

Section 285 provides the district court discretion to award reasonable attorney fees in patent infringement actions to the prevailing party in "exceptional cases." "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane*, 134 S. Ct. at 1755–56.

Before the decision in *Octane*, the Federal Circuit had limited patent fee shifting to cases in which the prevailing party demonstrated, by clear and convincing evidence, either (1) litigation misconduct; or (2) that the litigation was both objectively baseless *and* brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc. ("Brooks Furniture")*, 393 F.3d 1378, 1381–82 (Fed. Cir. 2005). In the first scenario, a court could award fees only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture*, 393 F.3d at 1381. "Absent misconduct in conduct of the litigation or in securing the patent, [fees] may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* In the alternative, a court could award fees where it found that the patentee's position is "so

Order

3

unreasonable that no reasonable litigant could believe it would succeed" and that the patentee "actually know[s]" that to be true. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377–78 (2011); *see Octane*, 134 S. Ct. at 1754.

*Octane* rejected this "rigid and mechanical formulation." *Octane*, 134 S. Ct. at 1754. With regard to litigation misconduct, the Court diverged from the Federal Circuit's focus on sanctionable conduct, holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 134 S. Ct. at 1757. Nor must the district court find that the litigation was both objectively baseless and brought in subjective bad faith to award fees. "[A] case presenting *either* subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* (emphasis added).

Construing the term "exceptional" in accordance with its ordinary meaning of "uncommon," "rare," or "not ordinary," the Court in *Octane* held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*, at 1756. District courts are instructed to exercise their discretion on a case-by-case basis, considering the totality of the circumstances and applying a preponderance of the evidence standard. *Id.*, at 1756, 1758. Rejecting the Federal Circuit's then existing framework, the Court suggested district courts look to "nonexclusive" factors it previously set forth concerning a similar provision of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756, n.6 (quoting *Forgerty v. Fantasy*, 510 U.S. 517, 534, n.19 (1994)).

A. Substantive Strength of the Claims

Defendants first argue essentially that the "rare" case in which invalidity may be determined on the pleadings (such as this) ipso facto constitutes an "exceptional" case. *See Ultramercial*, 722 F.3d at 1338 (invalidating a patent at the pleading stage for lack of patentability is a "rare" occurrence). In granting defendants' motion for judgment on the pleadings, the Court echoed *Ultramercial*, concluding that "this appears to be the rare case in which the defendants have met their burden at the pleadings stage to show by clear and convincing evidence that the '445 patent claims an unpatentable abstract idea." The rarity to which *Ultramercial* refers arises where the record is such that a determination of unpatentability can be made at the pleadings stage. It is not necessarily a judgment on the relative strength or weakness of the patentee's litigation position, particularly here where the critical issue of inventive concept is evolving. Nowhere does *Octane* suggest a shift to the "English Rule" whereby a party who concludes a case on a pleading motion invariably gets his or her fees.

It is particularly relevant here that the substantive law in this area was unsettled at the time of the prior Order. The Supreme Court had granted certiorari on the directly-applicable question of "[w]hether claims to computer-implemented inventions—including claims to systems and machines, processes, and items of manufacture—are directed to patent-eligible subject matter within the meaning of 35 U.S.C. § 101 as interpreted by this Court?" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice Corp.")*, No. 13-298 (cert. granted Dec. 6, 2013). The case had been argued at the time this Court heard the motion for judgment on the pleadings, but a decision was not issued until June 2014 when the Supreme Court affirmed the Federal Circuit, holding that the abstract idea underlying the claims at issue was unpatentable and not saved by generic limitations requiring computer implementation. *Id.*, 134 S. Ct. 2347, 2360 (2014). While ultimately agreeing with the Federal Circuit, the decision in *Alice Corp.* provided additional clarity regarding computer system applications, an issue upon which the Federal Circuit, sitting en banc, had failed to provide a majority opinion. *Id.*, at 2357.

In addition to the judgment of invalidity on the Rule 12(c) motion, defendants note the Court's observations that GT provided "no meaningful alternative," "no substantive counter-

argument," and "no explanation" of what the '445 patent added to the abstract idea of mid-gaming purchasing. It is true that GT's briefing of the prior motion, to a large extent, consisted of granular parsing of the claimed steps rather than any substantive explanation of how this differed from the underlying abstract idea. It did not, however, descend to the level of frivolous argument or objective unreasonableness. *See Octane*, 134 S. Ct. at 1756, n.6.

B. <u>Manner of Litigation</u>

"The purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation practices . . . but is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310, n.1 (Fed. Cir. 2012), *vacated and remanded*, 134 S. Ct. 1744 (2014); *see Octane*, 134 S. Ct. at 1757 ("sanctionable conduct is not the appropriate benchmark").

Although *Octane* eased the standard for fee shifting, and clearly reduced the prevailing party's burden from clear and convincing to a preponderance of the evidence, post-*Octane* decisions awarding fees have concerned egregious behavior. See*, e.g., Intellect Wireless, Inc. v. Sharp Corp.*, No. 10-6763, 2014 WL 2443871, at *6 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without which, the court concluded, the plaintiff would not have obtained the patents at issue); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-2027, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (criticizing plaintiff for post-trial motions that simply sought to re-litigate issues decided during trial and awarding fees at least as to those motions); *Precision Links Inc. v. USA Products Group, Inc.* No. 08-576, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (criticizing plaintiff for seeking a preliminary injunction based in large part on a previously-rejected theory of liability and filing frivolous post-dismissal motions). GT's conduct may suggest an aggressive litigation strategy, but it falls short of conduct that has been found to justify fee-shifting even post-*Octane*.

Defendants urge the Court to consider GT's course of conduct beginning with its original complaint in the Southern District of California in the *Facebook* matter. While defendants argue GT violated the joinder statute, the court never held that joinder was improper in the original complaint, concluding only after Facebook had been dismissed and that the remaining parties were misjoined.[3] Nor have defendants sufficiently established GT's conduct in *Facebook* is relevant to the question of fees in this case.

After the original complaint was dismissed, defendants argue GT improperly re-filed complaints against each defendant in the Southern District of California even though defendants had no meaningful connection to that district, forcing each defendant to move to transfer venue. Although each of these cases was eventually transferred, defendants concede that venue was proper, if not convenient, in the Southern District.

Defendants next argue GT's actions required defendants to incur unnecessary costs and attorney fees in defending against discovery demands, including a motion to compel, which were calculated to drive litigation costs and steer defendants towards settlement. Defendants have identified, and submitted as exhibits, twenty-five emails from GT threatening motions to compel. These emails, however, encompassed seven different cases, including some with defendants who previously settled and are no longer part of this action. Others include duplicate messages within a single chain of emails.

For example, exhibits 13–16 are all part of a single email chain sent in the original *Facebook* matter. On November 14, 2012, counsel for GT states that defendant's plan to provide rolling production of documents was "not acceptable." Exh. 13. Counsel goes on to state, "The Defendants' were required to produce documents responsive to GameTek's requests for production almost a month ago. We need each defendants' [sic] prompt availability for a meet and confer, as we're going to file a motion to compel compliance with the Defendants' Rule 34

---

[3] On GT's original theory, Facebook had facilitated each of the defendant's allegedly infringing conduct through its gaming platform. GT now argues that it learned through ADR efforts and early discovery that Facebook's platform neither encouraged nor facilitated the alleged infringement and, on that basis, GT voluntarily dismissed Facebook and then joined defendants in a joint motion to sever. Defendants counter that no such facts concerning Facebook's involvement appeared in the original complaint.

production obligations." *Id.* Defense counsel, apparently, did not respond, and so GT repeated its enquiry on November 15 and again on November 23. Exh. 14, 15. Still receiving no response, GT stated on November 27 that if there was no response it would file a motion to compel. Exh. 16. Similar patterns are reflected repeatedly in the emails submitted in support of this motion. According to GT, these exhibits demonstrate that defendants "complied with most of GT's demands for compliance with the discovery rules, but only belatedly and only when necessary to avoid a motion to compel being filed." Whether GT was correct, in the first instance, to suggest it was prepared to file a motion to compel, it cannot be faulted for repeating that fact when the recipient chose not to reply. The only motion to compel actually filed by GT was denied by the assigned magistrate judge. No. 13-2546, Dkt. No. 63 (Nov. 22, 2013).

Finally, defendants point to GT's actions after the hearing on the motion for judgment on the pleadings, at which the Court gave a tentative ruling in favor of defendants. The morning after the hearing, GT gave notice of its intent to add a new accused product to the case; one hour later, GT gave notice of its intent to continue with several scheduled depositions and demanded to depose additional employees of defendants on the remaining games and topics. It is not clear how much additional effort, if any, was required by defendants to respond to these notices as the Court's order granting judgment on the pleadings was issued later that day.

In sum, defendants' allegations may suggest an aggressive litigation strategy by GT. They do not demonstrate by a preponderance of the evidence that GT's manner of litigation was "so 'exceptional' as to justify an award of fees." *Octane*, 134 S. Ct. at 1757.

## IV. CONCLUSION

For the above reasons, defendants' motions for attorney fees are denied. The administrative motions to file certain materials under seal, primarily financial information relating to the acquisition of the '445 patent and the settlement agreements entered into between GT and former defendants in this matter, are granted.[4]

---

[4] Case No. 13-2546, ECF Nos. 95, 107, 110; Case No. 13-3089, ECF Nos. 94, 108, 110; Case No. 13-3472, ECF Nos. 99, 108, 111; Case No. 13-3493, ECF Nos. 77, 91, 93.

IT IS SO ORDERED.

DATED: September 2, 2014

_____
RICHARD SEEBORG
United States District Judge

No. CV 13-2546 RS
ORDER